1  Shawn A. McMillan, Esq. – SBN: 208529
   attyshawn@netscape.net
2  Stephen D. Daner, Esq. – SBN: 259689
   steve.mcmillanlaw@gmail.com
3  Evan D. Pullman, Esq. – SBN: 342431
   evan.pullman.mcmillanlaw@gmail.com
4  THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
   4955 Via Lapiz
5  San Diego, California 92122
   Telephone: (858) 646-0069
6  Facsimile: (858) 746-5283

7  Attorneys for Plaintiffs A.W.1 and A.W.2

8
                    UNITED STATES DISTRICT COURT
9
           CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
10

| 11 | A.W.1, an individual; A.W.2, an individual; | Case No.: |
|----|----|----|
| 12 | | **COMPLAINT FOR DAMAGES** |
| 13 | Plaintiffs, | |
| | vs. | Claim 1: 42 U.S.C. §1983 (Failure to Protect) |
| 14 | COUNTY OF RIVERSIDE, a public entity; M. SONIA CORREA, an individual; DANIELA ELIHU, an | Claim 2: *Monell*-Related Claim (Failure to Protect) |
| 15 | individual; KAILA PAUL, an individual; JUAN CEVALLOS, an | Claim 3: Breach of Mandatory Duties |
| 16 | individual; KRISTEN PRESTON, an individual; and DOES 1 through 20, | Claim 4: Negligence |
| 17 | inclusive, | |
| 18 | Defendants. | **JURY TRIAL DEMANDED** |

19

20

21

22

23  / / /

24

25

26

27

28

**Jurisdiction and Venue**

1. This action is brought pursuant to 42 U.S.C. §1983 to seek redress for Defendants' actions and/or omissions under color of law. Defendants' conduct deprived Plaintiffs of their fundamental constitutional rights secured under the United States Constitution, including the Fourth and Fourteenth Amendments, and under federal and state law.

2. Jurisdiction is conferred by 28 U.S.C. §§1343(a)(3) and 1343(a)(4), which provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred by 28 U.S.C. §1331 because the claims for relief derive from the United States Constitution and the laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state laws claims, pursuant to 28 U.S.C. §1367.

3. The acts and omissions complained of herein occurred in the County of Riverside, and it is believed that all living parties currently reside in the County of Riverside. Venue is proper in the District Court for the Eastern District of California.

4. Plaintiffs make the following allegations and claims upon personal belief, investigation of their counsel, and on information and belief.

**The Parties**[1]

5. At all times relevant to this Complaint, Plaintiff A.W.1, was a resident of Riverside County, California. A.W.1 was born in February 2005.

6. At all times relevant to this Complaint, Plaintiff A.W.2, was a resident of Riverside County, California. A.W.2 was born in December 2006.

7. Defendant County of Riverside ("County") is a public entity of which the Department of Public Social Services Children's Services Division ("DPSS") is a subdivision.

---

[1] Plaintiffs' initials are being used due to the sensitive nature of the allegations, and because at all relevant times the Plaintiffs were minors.

8.   DPSS Social Worker M. Sonia Correa ("Ms. Correa" or "Correa") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

9.   DPSS Supervising Social Worker Daniela Elihu ("Ms. Elihu" or "Elihu") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

10.  DPSS Social Worker Kaila Paul ("Ms. Paul" or "Paul") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

11.  DPSS Social Worker Juan Cevallos ("Mr. Cevallos" or "Cevallos") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

12.  DPSS Social Worker Kristen Preston ("Ms. Preston" or "Preston") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

13.  Hereinafter, when referred to collectively, the Defendants in paragraphs 8 through 12, inclusive, may occasionally be referred to as the SOCIAL WORKER DEFENDANTS.

14.  Plaintiffs are ignorant of the true names and capacities of those County of Riverside Defendants sued herein as County Defendant DOES 1 through 20, and for that reason has sued such County of Riverside Defendants under such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to identify the County Defendant DOES when their identities have been ascertained. Each of the fictitiously named County of Riverside DOE Defendants was in some manner liable and legally responsible for the harms sustained by Plaintiffs in that their conduct caused the damages and injuries set forth herein.

15.  Whenever this Complaint makes reference to any act of Defendants, such allegations shall be deemed to mean all named Defendants, or their officers,

1  agents, managers, representatives, employees, heirs, assignees, customers, tenants,

2  who did or authorized such acts while actively engaged in the operation,

3  management, direction or control of the affairs of Defendants (or any of them) and

4  while acting within the course and scope of their duties, except as specifically

5  alleged to the contrary.

6  16. Defendants were the knowing agents and/or alter egos of one another. Defendants

7  directed, ratified, and/or approved each other's conduct and that of each other's

8  agents or employees. Defendants agreed upon, approved or ratified each other's

9  conduct, or otherwise conspired together to commit all of the acts and/or

10  omissions alleged herein.

11  **COMMON ALLEGATIONS**

12  – *In 2007, David Jakubowski is Caught Licking His Friend's Penis; DPSS*

13  *is Notified and Responds*

14  17. In 2007, David Jakubowski[2] was living with his mother, Debra Iselhart, and his

15  younger brother, D.B.

16  18. In August 2007, the County received an Emergency Response Referral alleging

17  that David Jakubowski was engaging in inappropriate sexual behavior with other

18  children in his apartment complex. David Jakubowski was caught licking his

19  friend's penis.

20  19. Ms. Iselhart reported David Jakubowski's sexually inappropriate conduct to his

21  school. David Jakubowski's school put him on "watch," and required that he never

22  be left alone with any other children. Likewise, Ms. Iselhart stopped leaving David

23  Jakubowski alone with other children – including his brother, D.B.

24  20. Social Worker Christine Fowler investigated the allegation, and interviewed Ms.

25  Iselhart. She confirmed to Ms. Foweler that David Jakubowski had been caught

26  licking his friend's penis.

27

28  [2] David Jakubowski is no longer a minor.

21.  Ms. Fowler documented David Jakubowski's sexually inappropriate conduct in David Jakubowski's Juvenile Case Files, the County's agency records, and the CWS/CMS database.

– ***The County Takes Custody of David Jakubowski***

22.  In or around January 2009, D.B. was scalded in the shower. The County removed David Jakubowski and D.B., and took custody of David Jakubowski and D.B.

23.  The County and Social Worker Cindy Moreau placed David Jakubowskiin Foster Home No. 1. D.B. was placed with his biological father.

24.  The County and DOES 1-20, did not disclose or tell Foster Home No. 1 that (1) David Jakubowski had a prior history of inappropriate sexual behaviors involving a younger boy, (2) David Jakubowski's School did not allow him to be left alone with other children, or (3) that Ms. Iselhart did not allow David Jakubowski to be left alone with other children – including D.B.

– ***Out of the Blue, David Jakubowski Denies That he Sexually Abuses D.B.***

25.  On January 23, 2009, Social Worker Rebecca Miranda interviewed David Jakubowski at his school. During this interview, Ms. Miranda asked how D.B. got hurt in the shower. Without prompting, David Jakubowski blurted out that he does "nothing sexual" with D.B.

26.  Ms. Miranda was concerned by this revelation, and asked why David Jakubowski mentioned it, because it was not related to her question. David Jakubowski appeared very nervous and said that he washes his own private parts, and that D.B. also washes his own private parts. David Jakubowski wanted to change the subject.

27.  Ms. Miranda documented her concerns and David Jakubowski's statements in David Jakubowski's Juvenile Case Files, the County's agency records, and the CWS/CMS database.

/ / /

1    –    ***In April 2009, The County Places David Jakubowski in Foster Home No.
2         2***

3    28.    In April 2009, the County and Ms. Miranda placed David Jakubowski in Foster
4           Home No. 2.

5    29.    The County and DOES 1-20, did not disclose or tell Foster Home No. 2 that (1)
6           David Jakubowski had a prior history of inappropriate sexual behaviors involving
7           a younger boy, (2) David Jakubowski's School did not allow him to be left alone
8           with other children, or (3) that Ms. Iselhart did not allow David Jakubowski to be
9           left alone with other children – including his brother D.B.

10   –    ***David Jakubowski Engages in Aggressive and Negative Behaviors in
11        Foster Home No. 2; His Foster Parents ask the County to Remove David
12        Jakubowski From Their Home***

13   30.    Between April 2010 through November 2010, David Jakubowski was physically
14          and verbally acting out towards his foster parents and foster siblings. David
15          Jakubowski engaged in and/or displayed negative behaviors, would lash out at his
16          foster parents and foster siblings, and become aggressive toward his foster
17          siblings. David Jakubowski would fight his foster brother. David Jakubowski
18          displayed uncontrollable anger that built up until he exploded. David
19          Jakubowski's foster parents struggled everyday to deal with David Jakubowski's
20          physical and verbal aggressive behaviors. Defendant Correa and DOES 1-20 were
21          expressly notified of David Jakubowski's aggressive behaviors.

22   31.    Finally, in November 2010, David Jakubowski's foster parents could no longer
23          handle David Jakubowski's aggressive behaviors. David Jakubowski's Foster
24          Home No. 2 decided to – and did – request that the County remove David
25          Jakubowski from their home. The County removed David Jakubowski from Foster
26          Home No. 2 and began looking for a new placement.

27   / / /

28

---

– *In 2010, The County Places David Jakubowski in the Wheeler Home (Foster Home No. 3) – Without Disclosing His Sexually Inappropriate Conduct or Other Potentially Dangerous Propensities*

32. In November and/or December 2010, Defendants Correa, Elihu, Paul, and DOES 1-20, knew that David Jakubowski had a history of inappropriate sexual behaviors and episodes of violent acing out. This information was documented in David Jakubowski's Juvenile Case Files, the County's agency records, and the CWS/CMS database.

33. Defendants Correa, Elihu, Paul, and DOES 1-20, had trouble placing David Jakubowski in a new foster home, in part based on his noted behaviors. There were no placements available.

34. Jamie Norman, a social worker with Valley Oaks, Foster Family Agency, recommended that Defendants Correa, Elihu, Paul, and DOES 1-20, look at Ms. Wheeler as a potential placement.

35. Defendants Correa, Elihu, Paul, and DOES 1-20, inquired with Ms. Wheeler. She advised that she was not a licensed or certified foster care provider, but would be willing to consider David Jakubowski's placement in her home.

36. Ms. Wheeler told Defendants Correa, Elihu, Paul, and DOES 1-20 that her biological and/or adoptive children lived in her home – including, but not limited to, minors males K.W.1, K.W.3, A.W.1, A.W.2, and minor female K.W.2.

37. In or around November 2010, Defendants Correa, Elihu, Paul, and DOES 1-20, placed, and/or participated in the decision to place David Jakubowski in Ms. Wheeler's home (Foster Home No. 3).

38. But, Defendants Correa, Elihu, Paul, and DOES 1-20, did not disclose or tell Ms. Wheeler that (1) David Jakubowski had a prior history of inappropriate sexual behaviors toward a younger boy, (2) David Jakubowski's School did not allow David Jakubowski to be left alone with other children, or (3) that Ms. Iselhart did not allow David Jakubowski to be left alone with other children – including David

1    Jakubowski's younger brother, D.B.

2    39.   Defendants Correa, Elihu, Paul, and DOES 1-20 knew that Ms. Wheeler had
3          several young boys in her home and care. But, Defendants Correa, Elihu, Paul, and
4          DOES 1-20 never warned Ms. Wheeler against leaving David Jakubowski alone
5          with younger boys.

6    40.   Ms. Wheeler was provided with a Statement of Dangerous Propensities, but the
7          County's Statement of Dangerous Propensities did not disclose David
8          Jakubowski's prior sexually inappropriate conduct or physically aggressive
9          behaviors, or for that matter any other potentially dangerous behaviors.

10   41.   If Ms. Wheeler had been fully informed about David Jakubowski's prior history of
11         inappropriate sexual behaviors, and known aggressive tendencies she would not
12         have accepted David Jakubowski's placement in her home or exposed her children
13         and family to him.

14         **–  *Ms. Wheeler Becomes David Jakubowski's Legal Guardian***

15   42.   In or around 2011, Defendants Correa, Elihu, and DOES 1-20 had trouble finding
16         an extended family member and/or long term placement for David Jakubowski

17   43.   Defendants Correa, Elihu, and DOES 1-20 decided to and/or participated in the
18         decision to have Ms. Wheeler become David Jakubowski's Legal Guardian.

19   44.   In or around June 2011, Defendants Correa, Elihu, and DOES 1-20 conducted a
20         home study, social study, and/or legal guardian assessment of the Wheeler home.
21         Through this investigation, Defendants Correa, Elihu, and DOES 1-20 knew that
22         David Jakubowski was readily interacting with K.W.1 and K.W.2, and K.W.3, and
23         Plaintiffs A.W.1, and A.W.2 – and/or sharing a bedroom with certain minor male
24         children.

25   45.   During the legal guardianship process, Defendants Correa, Elihu, and DOES 1-20
26         did not disclose or warn Ms. Wheeler or the Plaintiffs, in any way, that (1) David
27         Jakubowski had a prior history of inappropriate sexual behaviors toward younger
28         boys, (2) David Jakubowski's School did not allow David Jakubowski to be left

alone with other children, or (3) that Ms. Iselhart did not allow David Jakubowski to be left alone with other children – including David Jakubowski's younger brother, D.B. In addition, these Defendants did not disclose the reasons why David Jakubowski had been expelled from his prior placement, i.e., due to his documented physically aggressive and unruly behaviors.

46. If Ms. Wheeler had been fully informed about David Jakubowski's prior history of inappropriate sexual behaviors, and physically aggressive tendencies she would not have accepted David Jakubowski into her family home and would not have agreed to become David Jakubowski's legal guardian.

47. On or about July 21, 2011, the Court approved Ms. Wheeler as David Jakubowski's legal guardian.

48. Defendants County, Correa, Elihu, and DOES 1-20 did not close David Jakubowski's juvenile case, and did not terminate their supervision. Instead, David Jakubowski's case remained open, and DPSS's supervision continued.

– ***David Jakubowski Repeatedly Sexually Assaults and Rapes His Younger Foster Brothers***

49. Beginning in or around 2011 or 2012, David Jakubowski repeatedly sexually assaulted and raped his foster brothers, including Plaintiffs A.W.1. and A.W.2.

50. David Jakubowski would position himself behind his younger foster brothers and rub his penis between his inner thighs and/or insert his penis into the minor male Plaintiffs' anus. David Jakubowski would repeatedly sexually assault and rape the minor male Plaintiffs A.W.1 and A.W.2, until he reached climax and ejaculated.

51. David Jakubowski also forced his younger foster brothers including A.W.1 and A.W.2 to orally copulate him until he reached climax and ejaculated on more than one occasion.

52. David Jakubowski carried out his sexual assaults by force. Plaintiffs A.W.1 and A.W.2 would fight and attempt to resist David Jakubowski's sexual assaults. But, David Jakubowski would punch, kick, and hold the Plaintiffs down during the

sexual assaults and rapes. David Jakubowski foiled the Plaintiffs' repeated attempts to flee and ignored their verbal and physical protests. David Jakubowski would trap Plaintiff in the bedroom by blocking the door with a mattress.

53. David Jakubowski threatened to stab, punch, kick, and/or beat up the Plaintiffs, to keep them from disclosing the sexual abuse and rapes. When Plaintiffs threatened to disclose the abuse, David Jakubowski would become enraged and would carry out his physical threats and strike Plaintiffs.

– ***David Jakubowski Sexually Assaults K.W.2***

54. Beginning in or around 2011 or 2012, David Jakubowski started to sexually assault and/or inappropriately touch minor female K.W.2. David Jakubowski would dry hump K.W.2 from behind.

– ***In 2011, D.B. Discloses Prior Sexual Abuse by David Jakubowski – The County Does Not Warn Ms. Wheeler***

55. In September 2011, D.B. began acting out sexually, exposing himself at school, and masturbating in front of other children.

56. D.B. disclosed that David Jakubowski had sexually abused him. As a result, Social Worker John Dean made a Suspected Child Abuse Report.

57. On or about September 14, 2011, Cory Brooks, D.B.'s father, confirmed to Mr. Dean that David Jakubowski sexually abused D.B.

58. On September 19, 2011, Mr. Dean informed Defendant Cevallos and DOES 1-20 that D.B. disclosed prior sexual abuse by David Jakubowski

59. Mr. Cevallos and DOES 1-20 documented D.B.'s sexual molestation in David Jakubowski's agency records, referral history, and CWS/CMS Database.

60. At this time, Mr. Cevallos and DOES 1-20 knew that David Jakubowski was sharing a bedroom with and/or regularly interacted with his foster brothers – but did absolutely nothing to protect the children in Ms. Wheeler's home from David Jakubowski's assaults.

61. Mr. Cevallos and DOES 1-20 did not warn or tell Ms. Wheeler that David

Jakubowski was known and/or suspected to have sexually abused other children, including his brother D.B. Mr. Cevallos and DOES 1-20 did not remove David Jakubowski from the Wheeler home. Mr. Cevallos and DOES 1-20 did not implement or set up safeguards to protect the Plaintiffs. Mr. Cevallos and DOES 1-20 did not question or interview David Jakubowski regarding the sexual abuse allegations. Nor did Mr. Cevallos undertake any effort at all to determine whether David Jakubowski had similarly molested or raped the other children in Ms. Wheeler's home.

62. Instead, Mr. Cevallos and DOES 1-20 deliberately suppressed and/or knowingly ignored David Jakubowski's sexual abuse of D.B. and refrained from disclosing the information to Ms. Wheeler and/or the Plaintiffs.

– *In November 2012, More Sexual Abuse Allegations are Leveled Against David Jakubowski – The County Does Not Remove David Jakubowski or set up Appropriate Safeguards*

63. In November 2012, Defendants Cevallos, Preston, and DOES 1-20 were informed of allegations that David Jakubowski had sexually abused K.W.3 – i.e., David Jakubowski forced K.W.3 to orally copulate him. There were also allegations that David Jakubowski asked Plaintiff A.W.2 to orally copulate him.

64. At this time, Defendants Cevallos, Preston, and DOES 1-20 knew that David Jakubowski had a history of inappropriate sexual behavior – including the prior allegations that he sexually molested D.B. Despite this, Defendants Cevallos, Preston, and DOES 1-20 did not remove David Jakubowski from the Wheeler home. Defendants Cevallos, Preston, and DOES 1-20 did not implement or set up safeguards to protect the Plaintiffs from David Jakubowski Defendants Cevallos, Preston, and DOES 1-20 did not disclose these sexual abuse allegations to Ms. Wheeler or otherwise advise her to implement protective measures to ensure the safety of the minor Plaintiffs who were or could be exposed to David Jakubowski

65. Defendants Cevallos, Preston, and DOES 1-20 knowingly allowed David

1    Jakubowski unfettered and unrestricted access to Plaintiffs A.W.1 and A.W.2.

2    – ***David Jakubowski Sexually Assaults and Rapes K.W.3***

3    66.    On or about January 9, 2013, Ms. Wheeler took her infant granddaughter to urgent
4    care, for an allergic reaction to Aquaphor.

5    67.    While Ms. Wheeler was gone, David Jakubowski lured A.W.1 and K.W.3 into his
6    bedroom. Once inside, David Jakubowski blocked the door with a mattress, and
7    trapped A.W.1 and K.W.3 inside.

8    68.    David Jakubowski pulled K.W.3's pants down, and then his own. Next, David
9    Jakubowski sexually assaulted and raped K.W.3.

10    69.    K.W.3 tried to resist, and told David Jakubowski to stop. But, David Jakubowski
11    was stronger, and continued his sexual assault. David Jakubowski forced A.W.1 to
12    witness the assault.

13    70.    K.W.2 heard the assault, and she tried to intervene, and get into the bedroom. But,
14    the mattress prevented her access.

15    71.    After the sexual assault and rape, A.W.1 and K.W.3 escaped and crawled out the
16    bedroom window, crawled across the roof, and re-entered the house through the
17    next bedroom window.

18    72.    Once inside, K.W.2 asked A.W.1 and K.W.3 what happened. A.W.1 confirmed
19    David Jakubowski's sexual assault. But, K.W.3 refused to talk about the sexual
20    assault and rape.

21    73.    When Ms. Wheeler returned from Urgent Care, K.W.2 disclosed David
22    Jakubowski's sexual assault and rape. Ms. Wheeler called Defendant Preston, and
23    disclosed the sexual assault and rape. Defendant Preston instructed Ms. Wheeler to
24    call the County's child abuse hotline, and make an official child abuse report so
25    the proper authorities could respond. She did.

26    – ***The County Investigates David Jakubowski's Sexual Assault and Rape;***
27    ***the County Does Not Believe the Sexual Assault Victims***

28    74.    On or about January 10, 2013, Defendant Preston and County Social Worker

COMPLAINT FOR DAMAGES

1    Michael Huser investigated David Jakubowski's sexual assault.

2    75.    A.W.1 and K.W.2 told Defendant Preston and Mr. Huser about David

3    Jakubowski's sexual assault, and the details.

4    76.    Defendant Preston and Mr. Huser doubted that any sexual assault had occurred.

5    They believed that A.W.1 and K.W.2 fabricated the whole story. But, Ms. Wheeler

6    felt confident that A.W.1 and K.W.2 told the truth. And, when pressed, K.W.2 was

7    adamant that David Jakubowski sexually assaulted K.W.3.

8    77.    Accordingly, Defendant Preston and Mr. Huser reluctantly called the Hemet Police

9    Department. Officers Caballero and Barnett responded to the scene.

10    78.    Officers Caballero and Barnett attempted to interview K.W.3, but he just hid his

11    face, and refused to speak to the police officers. Eventually K.W.3 found his

12    voice, and confirmed David Jakubowski's sexual assault. Officers Caballero and

13    Barnett initiated a criminal investigation of David Jakubowski's sexual assault.

14    79.    The Hemet Police Department assigned Officer Rene McNish to investigate the

15    abuse allegations. Despite David Jakubowski's ongoing criminal investigation for

16    sexual assault, Defendant Preston and Social Worker Supervisor Carrie Mosiello

17    expressed a concern to the Juvenile Court, that the sexual abuse allegations might

18    be fabricated.

19    80.    Ms. Wheeler disagreed, and believed A.W.1, K.W.2, and K.W.3. She requested

20    that David Jakubowski's guardianship be immediately rescinded, and that David

21    Jakubowski be removed from her home. Defendant Preston removed David

22    Jakubowski from Plaintiffs' home.

23    –    ***David Jakubowski is Placed in a New Foster Home; the County Does Not***

24    ***Warn of Disclose David Jakubowski's Sexual Assaults and/or Sexually***

25    ***Inappropriate Behaviors***

26    81.    On or about January 10, 2013, Ms. Preston and DOES 1-20, placed, and/or

27    participated in the decision to place David Jakubowski in Foster Home No. 4 –

28    through the Family Health and Support Network, Foster Family Agency. But, as

COMPLAINT FOR DAMAGES

with David Jakubowski's prior placements, Defendant Preston and DOES 1-20, did not disclose or tell Foster Home No. 4 or foster agency that (1) David Jakubowski had a prior history of inappropriate sexual behaviors toward younger boys, (2) David Jakubowski was the subject of an ongoing criminal investigation for sexually abusing his foster brothers, (3) David Jakubowski's School did not allow David Jakubowski to be left alone with other children, or (4) that Ms. Iselhart did not allow David Jakubowski to be left alone with other children – including David Jakubowski's younger brother, D.B.

82. Preston and DOES 1-20 knew that there were several male minors in Foster Home No. 4, and that David Jakubowski would share a bedroom with his foster brother(s). But, as apparently was their custom and practice, Defendant Preston and DOES 1-20 never warned Foster Home No. 4 of David Jakubowski's sexually inappropriate and/or assaultive propensities.

– *During the Criminal Investigation, David Jakubowski Admits to Sexually Assaulting the Plaintiffs*

83. During Officer McNish's investigation, A.W.1, A.W.2, K.W.1, K.W.2, and K.W.3 disclosed that they were repeatedly – over an extended period of time – sexually abused and/or assaulted by David Jakubowski (*See* Exhibit A (Declaration of Sgt. Rene McNish[3]), ¶¶9-15; 19.)

84. On or about March 11, 2013, David Jakubowski was arrested. Officer McNish interviewed David Jakubowski During the interview, David Jakubowski admitted to sexually assaulting and/or raping Plaintiffs A.W.1 and A.W.2, . (*See* Exhibit A (Declaration of Sgt. Rene McNish), ¶¶17-19.)

85. David Jakubowski further explained that he preferred to sexually abuse younger males, because they were easier to persuade and force. David Jakubowski cooly warned Officer McNish that he would sexually assault another young boy if given

---

[3] The Declaration of Sgt. Rene McNish is attached sans exhibits.

COMPLAINT FOR DAMAGES

the opportunity. Officer McNish found David Jakubowski's admissions "chilling." (*See* Exhibit A (Declaration of Sgt. Rene McNish), ¶¶19-20.)

86. On or about March 20, 2013, Stephanie Luong, a County Probation Officer, and Vu "Jimmy" Nguyen, David's DPSS Social Worker, re-interviewed David regarding the sexual abuse allegations. During this interview, David again admitted to sexually molesting A.W.1, A.W.2., K.W.1 and K.W.3.

    – ***David Jakubowski Pleads Guilty to Sexually Assaulting Plaintiffs***

87. On March 13, 2013, the County charged David Jakubowski with nine (9) felony counts of violating Cal. Penal Code, §288(b), i.e., Lewd and Lascivious Act Upon a Child Under the Age of 14 with Force, Violence, Duress, Menace and Fear.

88. On April 4, 2013, David Jakubowski plead guilty – and freely admitted – to five (5) felony counts of Lewd and Lascivious Acts Upon a Child Under the Age of 14 with Force, Violence, Duress, Menace and Fear.

89. On April 4, 2013, David Jakubowski plead guilty – and freely admitted – to committing Lewd and Lascivious Acts Upon a Child Under the Age of 14 with Force, Violence, Duress, Menace and Fear upon Plaintiffs A.W.1 and A.W.2.

90. The Juvenile Court accepted David Jakubowski's admission, found the five (5) felony charges to true, and adjudged him a Ward of the court.

91. On or about April 11, 2013, David Jakubowski is released from Juvenile Hall, and placed at Trinity Youth Services – Apple Valley, a residential facility that provided  24-hour supervision, structure, sex offender treatment services and monitoring.

    – ***In January 2015, the County Places David Jakubowski in the Castro Home (Foster Home No. 5) – Without Disclosing His Sexually Inappropriate Conduct or Other Potentially Dangerous Propensities***

92. In or around December 2014, David Jakubowski was released from Trinity Youth Services. Upon release, the County took custody of David Jakubowski

93. In January 2015, the County and Social Worker Sonya Fowler placed David

1  Jakubowski in Lisa Castro's foster home (Foster Home No. 5) – through A
2  Coming of Age, Foster Family Agency.

3  94.  At the time of placement, the County and Ms. Fowler knew that David Jakubowski
4  had admitted to sexually assaulting his younger foster brothers, had felony sexual
5  assault conviction, and a history of sexually inappropriate behaviors – as
6  documented in his DPSS and Probation files.

7  95.  The County and Ms. Fowler did not provide Ms. Castro or A Coming of Age with
8  the pertinent details regarding David Jakubowski's prior history of multiple
9  inappropriate sexual behaviors toward younger boys. (*See* Exhibit B (Declaration
10  of Lisa Castro[4]), ¶¶2-4.) Ms. Fowler – or any County social worker – never told A
11  Coming of Age that David Jakubowski had been arrested, charged, and convicted
12  of sexually assaulting and/or raping hist foster brothers. The County's Statement
13  of Dangerous Propensities did not disclose David Jakubowski's prior sexual
14  assault of young boys or that he remained a risk to others.

15  96.  Following David Jakubowski's placement in Foster Home No. 5, Ms. Castro and
16  A Coming of Age attempted to obtain more details regarding David Jakubowski
17  But, the County and Ms. Fowler ignored the inquires. (*See* Exhibit B (Declaration
18  of Lisa Castro), ¶5.)

19  –  *In August 2015, the County Places minor G.M. in the Castro Home*
20  *(Foster Home No. 5) With David Jakubowski – a Known Sexual Predator*

21  97.  In August 2015, The County and Social Worker Hill placed G.M. in Ms. Castro's
22  foster home with David Jakubowski, a known sexual perpetrator.

23  98.  The County, Social Worker Hill, and Social Worker Fowler did not provide any
24  warning or instructions regarding G.M. and/or David Jakubowski, and did not set
25  up any safeguards to protect G.M. (*See* Exhibit B (Declaration of Lisa Castro), ¶8.)
26  The County, Social Worker Hill, and Social Worker Fowler never warned Ms.

27

28  [4] The Declaration of Lisa Castro is attached with redactions and sans exhibits.

Castro against leaving David Jakubowski alone with younger boys or G.M.

99.   Predictably, in September 2015, David Jakubowski sexually assaulted and raped
G.M. Just as David Jakubowski warned he would. David Jakubowski was arrested.

100.  Following his arrest, the County charged David Jakubowski with felony counts of
violating Cal. Penal Code, §288(b). David Jakubowski admitted to sexually
assaulting G.M., and plead guilty.

101.  In September and October, the County investigated Ms. Castro to determine
whether she was neglectful in preventing G.M's sexual assault and rape by David
Jakubowski After conducting a thorough and complete investigation, the County
concluded that Ms. Castro was not at fault for G.M.'s sexual assault. Instead, the
County concluded that Ms. Fowler failed to provide Ms. Castro with the pertinent
details regarding David Jakubowski's prior history of inappropriate sexual
behaviors toward younger boys. The County thus found that Ms. Castro could not
foresee David Jakubowski's sexual assault and rape of G.M.

### FIRST CLAIM FOR RELIEF – §1983

### *FAILURE TO PROTECT FROM HARM/STATE CREATED DANGER*

(By All Plaintiffs Against Defendants M. Sonia Correa, Daniela Elihu, Kaila Paul, Juan
Cevallos, Kristen Preston, and DOES 1 through 20, inclusive.)

102.  Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth
in full, Paragraphs 1 through 101.

103.  The Fourteenth Amendment imposes a duty on the government to protect
individuals from harm by third parties where it exposes a Plaintiffs to danger by
acting with deliberate indifference to a known or obvious danger. *Henry A. v.
Willden*, 678 F.3d 991, 998 and 1002 (9th Cir. 2012). When a government official
creates or exposes an individual to a risk of harm – and the individual is injured as
a result – constitutional rights are violated. *Id.* at 1002-1003.

104.  The DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20,
and each of them, at all relevant times, had direct access to David Jakubowski's

Juvenile Case File and his CWS/CMS history. These juvenile records and CWS/CMS database documented and/or contained information concerning David Jakubowski's various behaviors and conditions identified above – including but not limited to his sexually deviant and dangerous propensities, and/or his prior sexual molestations and/or assaults.

105. DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, knew, or with the exercise of reasonable care should have known, that David Jakubowski exhibited sexually deviant behaviors, and/or previously sexually molested another child.

106. DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, knew, or with the exercise of reasonable care should have known, that D.B. exhibited signs of being sexually abused, and that D.B. disclosed that David Jakubowski had sexually abused him.

107. Despite this, DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, refused to warn Ms. Wheeler or Plaintiffs of David Jakubowski's known and/or suspected dangerous propensities and/or inappropriate behaviors – including David Jakubowski's sexually deviant and aggressive behaviors. They also suppressed and/or refused to disclose the fact that: (1) David Jakubowski sexually molested another child, and (2) D.B. disclosed that David Jakubowski had sexually abused him. This conduct paved the way for David Jakubowski to sexually molest Plaintiffs.

108. DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, lied about David Jakubowski's inappropriate behavior and/or dangerous propensities, because they wanted to induce Ms. Wheeler into accepting David Jakubowski into her home. And, they feared that if Ms. Wheeler knew the truth, that she would reject David Jakubowski's placement.

109. At the time of David Jakubowski's placement, DPSS, Defendants Correa, Elihu, Paul, and/or DOES 1-20, and each of them, knew that the minor Plaintiffs lived in

the Wheeler home – and that David Jakubowski would directly interact with and/or have access to the minor Plaintiffs.

110. Plaintiffs would not have faced David Jakubowski's sexual abuse if DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, had provided adequate protection and safety. DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, ignored the potential risk to the minor Plaintiffs.

111. Plaintiffs would not have faced David Jakubowski's sexual abuse if the DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, had provided adequate protection and safety.

112. As a direct and proximate result of Defendants' conduct, the minor Plaintiffs' rights arising under the Fourteenth Amendment were violated; and, Plaintiffs suffered damages thereby, as according to proof at trial.

113. Defendants DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and DOES 1 through 20's conduct as herein alleged was intentional and/or with a conscious disregard for the minor Plaintiffs' rights. As a result of this misconduct, Plaintiffs are entitled to recover punitive damages.

## SECOND CLAIM FOR RELIEF

### *MONELL RELATED CLAIMS FOR FAILURE TO PROTECT FROM HARM/STATE CREATED DANGER*

(By All Plaintiffs Against Defendant County of Riverside)

114. Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth in full, paragraphs 1 through 113.

115. The County and DPSS had a duty to implement and follow policies, customs, and/or practices (hereinafter referred to as "customs") which confirm and provide the protections guaranteed under the United States Constitution. The County had a duty to use reasonable care to train, supervise, and/or control its agents, so as to protect these constitutional rights.

116.    Based on the duties charged to its social workers, including the duty to refrain from creating dangerous conditions in foster homes and/or homes, the County knew or should have known of the need to establish policies and/or customs required to protect the civil rights of foster families with whom their agents regularly came into contact – and to adequately train its social workers to comply with federal and state mandates related to placement considerations and required disclosures that must be made to foster placements before placing a child, like David Jakubowski, in the home.

117.    At the time of the underlying events, the County's policies included, but were not limited to:

    a.    Not requiring a social worker to regularly monitor, visit, interview, and/or checkup on a child in foster placement.

    b.    Not requiring a social worker to disclose known histories, behavioral, medical, and/or psychiatric problems to a foster parent prior to placing the particular child with that placement.

    c.    Allowing its workers to use deceptive and coercive tactics to obtain a foster parent's cooperation in placing a known sexually deviant or otherwise problem plagued child.

    d.    Of failing to inquire into a foster child's mental and physical history, despite a legal obligation to do so.

    e.    Of misrepresenting and/or concealing a foster child's history and needs in order to attain placement.

    f.    Of concealing and/or failing to report disclosures and/or allegations that a foster child had sexual assaulted another minor child to a foster parent;

    g.    Of failing to take any meaningful action to remove a child whose presence poses a threat to several other children in the same placement;

    h.    Allowing social workers to forgo reporting and/or investigating reports of neglect and/or abuse.

COMPLAINT FOR DAMAGES

19

i.    Not providing safety warnings that a child – with know sexual assault propensities – should be monitored, watched, and/or not left alone around minor boys.

118.    At the time of the underlying events, the County's customs and practices included, but were not limited to:

a.    Not providing foster parent's with information regarding a child's prior sexual assaults.

b.    Not requiring a social worker to regularly monitor, visit, interview, and/or checkup on a child in foster placement.

c.    Not including in court reports the details regarding a child's prior sexual assault conviction.

d.    Ignoring a foster parent's requests for more information regarding a child's prior sexual assault conviction.

e.    Not providing safety warnings that a child – with know sexual assault propensities – should be monitored, watched, and/or not left alone;

f.    Not informing a current foster parent that disclosures and/or allegations of sexual abuse were made against a foster child in their care;

119.    When the SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, created the danger to the minor Plaintiffs as detailed above, they were acting pursuant to and in accordance with the County's regularly established customs, policies, and practices.

120.    When the SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, withhold and/or suppressed David Jakubowski's known and/or suspected dangerous propensities and/or behaviors from Ms. Wheeler and Plaintiffs, they were acting pursuant to and in accordance with the County's policies, customs, or practices. The SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, above described actions were carried out with supervisor authorization and/or approval. The County's Social Worker Supervisors did not discipline, investigate, and/or

report their subordinate social workers for failing to act pursuant to and/or in accordance with the County's policies, customs or practices in dealing with Plaintiffs.

121. The County did not investigate or discipline any of the Individual Defendants for or in relation to their respective conduct, acts, and/or omissions alleged herein. The County regularly fails to discipline and/or investigate its social workers for withholding and/or suppressing information regarding a foster child from a foster parent.

122. The County refuses to admit that its social workers commit a constitutional violation when they fail to protect a child from harm, and failing to ensure the Plaintiffs' reasonable safety and minimally adequate care. The County denies that the SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, violated the Plaintiffs' constitutional rights. The County ratified and/or approved of the SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, conduct involving David Jakubowski and the Plaintiffs.

123. The County failed to train its social workers and agents on the constitutional rights of a parent and child, including but not limited to:

a. That the Fourteenth Amendment protects a foster family's right to remain free of dangerous conditions created by social worker conduct or misconduct, including the rights of children living in the home.

b. That social workers seeking to place a child in a foster home are required to disclose current and relevant information to the care provider regarding the health, education, known or suspected dangerous behaviors, psychiatric issues, and a host of other information to the foster care provider.

c. That social workers may not forgo reporting and/or investigating reports of neglect and/or abuse, including sexual abuse occurring within a foster home.

d. That social workers are required to disclose known histories, behavioral,

medical, and/or psychiatric problems to a foster parent of prospective

adoptive parent prior to placing the particular child with that placement.

e.    That social workers may not use deceptive and coercive tactics to obtain a

foster parent's cooperation in placing a known sexually deviant or otherwise

problem plagued child.

f.    That social workers may not misrepresent and/or conceal a foster child's

history and needs in order to attain and/or continue a placement.

g.    That social workers must take meaningful action to set up safeguards and/or

remove a child whose presence poses a threat to several other children in the

same placement;

124.   The County's failure to train its agents on these established constitutional rights

was a substantial factor in causing the Plaintiffs harm. Without adequate training,

the SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, were

unfamiliar with and oblivious to the Plaintiffs' rights.

125.   The County knew or should have known the full nature and extent of the above

enumerated rights and obligations. But, the County knowingly refrained from (1)

revising and/or implementing relevant policies, and (2) training it social workers

regarding the identified rights and obligations.

126.   Over the years, the County and its employees engaged in similar violations of

constitutional rights by failing to protect children from harm inflicted by a foster

child. These include, but are not limited to, the following:

a.    *G.M. v. County of Riverside*, Case No. RIC1615673. In *G.M.*, after David

Jakubowski was criminal convicted for sexually assaulting his minor foster

brothers, the County placed him in a foster home without warning or

providing the pertinent details of that minor's inappropriate sexual history.

The County next placed G.M., a minor male child, in that same foster home

as David Jakubowski, again without warning or setting up appropriate

safeguards. The County ignored the foster mothers warning that David

1      Jakubowski's behavior was rapidly deteriorating. Predictably, David

2      Jakubowski sexually assaulted minor G.M.

3   127.  These actions, and/or inactions, of the County were the moving force behind the

4      Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs' have sustained

5      general and special damages, in an amount to be proven at trial.

6                        **THIRD CLAIM FOR RELIEF**

7                      ***BREACH OF MANDATORY DUTIES***

8      (By All Plaintiffs Against All Defendants, and DOES 1 through 20, inclusive.)

9   128.  Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth

10     in full, Paragraphs 1 through 126.

11  129.  Defendants were obligated by constitutional provisions, statutes, and/or

12     regulations, as stated above, to document, report and subsequently inform others,

13     including Plaintiffs and/or Ms. Wheeler, about David Jakubowski's physical,

14     medical, behavioral, and emotional conditions as described in greater detail above,

15     including his prior sexual conduct in the previous home and/or foster placements.

16  130.  However, Defendants did not document the information; they did not report the

17     information and they did not inform others about the known dangers David

18     Jakubowski presented to Plaintiffs.

19  131.  Defendants County, SOCIAL WORKER DEFENDANTS, and DOES 1 through

20     20, violated and/or breached mandatory and nondelegable duties. This includes,

21     but is not limited to, those set forth in regulations in the California Department of

22     Social Services (CDSS) Manual of Policies and Procedures (MPP) established

23     pursuant to Welfare & Institutions Code Section 16501, and set forth in the

24     California Penal Code.

25  132.  The specific regulations and laws violated by Defendants County, SOCIAL

26     WORKER DEFENDANTS, and DOES 1 through 20, include, but are not limited

27     to the following:

28     a.    Cal. Welf. & Inst. Code, §361.4 and CDSS MPP Regulations 31-400

---

COMPLAINT FOR DAMAGES

23

(Placement), 31-405, 31-420, and 31-445, by failing to fulfill a social
worker's responsibilities for placement.

b.    CDSS MPP Regulations 31-300 (Service Delivery), 31-320 and 31-330, by
failing to adequately conduct face-to-face contacts with Plaintiffs.

c.    CDSS MPP Regulations 31-200 (Assessment and Case Plan) by failing to
failing to perform an assessment on A.S. to include any and all relevant
social, cultural, and physical factors that may impact her placement. And,
when placing M.T. in the Solares Homes, by failing to assess the
characteristics of the other children residing within the home.

d.    CDSS MPP Regulations 31-501, by failing to report and/or investigate
reports of neglect and/or abuse of Plaintiffs and other children.

e.    CDSS MPP Regulations 31-445, by failing to monitor Plaintiffs's physical
and emotional condition, and failing to take necessary actions to safeguard
the Plaintiffs's growth and development while in the Solares placement.

f.    Cal. Welf. & Inst. Code §366

g.    Cal Health & Saf. Code §1520

h.    Cal. DSS, Regulations 31-075; 31-101; 31-105; 31-125; 31-205; 31-206;
31-300, 31-310; 31-320; 31-330; 31-400, and 31-405

i.    22 CCR §§35079-35091; 35123; 35180-35184; 35197; 35203; 35207-
35207.1; 35211.

j.    22 CCR §§89227; 89231; 89318; 89372

133.    The Defendants County, SOCIAL WORKER DEFENDANTS, and DOES 1
through 20, failed to adhere to and/or fulfill these mandatory duties.

134.    The above identified constitutional provisions, statutes, and/or regulations,
particularly those requiring disclosure of David Jakubowski's known conditions
and/or behaviors, were designed to protect children and foster families such as
Plaintiffs.

135.    The requirements referenced above mandate an affirmative duty by Defendants to

COMPLAINT FOR DAMAGES

24

refrain from undertaking conduct, either by act or omission, that puts the Plaintiffs in danger they would not otherwise have faced. These duties included the duty to disclose certain information as described in detail above, to Ms. Wheeler and/or the Plaintiffs.

136. These mandates were put in place for the express purpose of providing for the safety of children that interact with foster placements, such as Plaintiffs, and to provide foster parents with accurate information.

137. Defendants did not comply with these duties. They failed to document David Jakubowski's sexual abuse of other minor children, failed to properly or adequately report it to law enforcement, and failed to set up safeguards and/or act to remove David Jakubowski from the Wheeler home once they had notice that David Jakubowski's had perpetrated sexual abuse against his brother, D.B.

138. Defendants failed to diligently discharge the above enumerated duties and obligations, and that failure was the direct proximate cause of severe injuries caused to Plaintiffs at the hands of David Jakubowski Had Defendants complied with their mandatory obligations David Jakubowski's sexual abuse would not have occurred and/or ended earlier. The case reviews, reporting, and disclosures were a safeguard meant to protect against the exact type of harm Plaintiffs suffered here.

139. The negligence of Defendants, and each of them, was the proximate, legal causes of the damages sustained by Plaintiffs, and they have incurred damages to be shown by proof at trial.

## FOURTH CLAIM FOR RELIEF

### *NEGLIGENCE*

(By All Plaintiffs Against All Defendants, and DOES 1 through 20, inclusive.)

140. Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 139.

141. SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, owed a duty to

warn and/or fully inform Ms. Wheeler and/or Plaintiffs of any matter that they "knew or should have known" that might endanger the Plaintiffs or their family. *Johnson v. State of Cal.*, 69 Cal.2d 782, 785 (1968). This includes disclosure of David Jakubowski's latent, dangerous qualities, and/or his background of inappropriate sexually deviant propensities, and/or any disciplinary record.

142. SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, had an affirmative obligation to avoid putting Plaintiffs in danger, including making sure the relevant background information regarding David Jakubowski's history was truthfully, honestly, accurately, and completely disclosed to Ms. Wheeler prior to placing David Jakubowski in the Wheeler home.

143. Prior to David Jakubowski's placement, and after being placed, SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, knew or should have know that David Jakubowski had latent, dangerous qualities – that presented a danger to Plaintiffs. But, SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, failed to and/or refused to warn Ms. Wheeler or Plaintiffs of David Jakubowski's latent dangers, or disclose the sexual abuse allegations from his home and/or prior placements.

144. Knowing of David Jakubowski's inappropriate sexually deviant history and propensities, SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, permitted David Jakubowski to privately interact with the minor Plaintiffs – without any adult supervision, warning, or setting up appropriate safeguards.

145. In the absence of adequate safeguards and/or warning, predictably, David Jakubowski sexually abused the minor Plaintiffs.

146. Plaintiffs sustained physical injuries, to an extent and in an amount subject to proof at trial, as a result of SOCIAL WORKER DEFENDANTS, and DOES 1 through 20's negligence and inadequate supervision.

147. Plaintiffs's sustained psychological, mental, and/or emotional injuries, to an extent and in an amount subject to proof at trial.

148.   SOCIAL WORKER DEFENDANTS, and DOES 1 through 20's negligence was a substantial factor in causing Plaintiffs' harm.

149.   Defendant County is vicariously responsible for the conduct of SOCIAL WORKER DEFENDANTS, and DOES 1 through 20 under Cal. Gov't Code, §815.2.

### Jury Trial Demand

150.   Plaintiffs demands a jury trial on each Claim for Relief set forth above.

### Prayer for Relief

WHEREFORE, Plaintiffs prays for judgment against Defendants, as to all causes of action, as follows:

1.   General damages and special damages according to proof;

2.   As against the individual defendants, punitive damages as allowed by law;

3.   Attorneys fees and costs pursuant to 42 U.S.C. §1988, and any other appropriate statute;

4.   Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief to be based upon a separate application);

5.   Costs of suit incurred herein; and

6.   Such further relief as the Court deems just and proper.

Dated: January 28, 2025        THE LAW OFFICES OF SHAWN A. MCMILLAN, APC

/s/ Stephen D. Daner
Shawn A. McMillan, Esq.
Stephen D. Daner, Esq.

Attorneys for Plaintiffs A.W.1 and A.W.2

# Exhibit A

# Exhibit A

# Exhibit A

1  | Shawn A. McMillan, Esq. – SBN: 208529
2  | Stephen D. Daner, Esq. – SBN: 259689
   | Adrian M. Paris, Esq. – SBN: 301355
3  | THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
   | 4955 Via Lapiz
4  | San Diego, CA 92122
   | Telephone: (858) 646-0069
5  | Facsimile: (858) 746-5283

6  | Attorneys for Plaintiff G.M.

7  | **SUPERIOR COURT OF CALIFORNIA**

8  | **COUNTY OF RIVERSIDE, CENTRAL DIVISION**

| | |
|---|---|
| G.M., a minor, by and through his Guardian ad litem, | Case No.:    RIC1615673 |
| Plaintiff, | **DECLARATION OF SGT. RENE MCNISH** |
| vs. | Judge:        Hon. Chad W. Firetag |
| COUNTY OF RIVERSIDE, a public entity; MARLO ANN CRUZ, an individual; CARRIE MOSIELLO, an individual; MICHAEL HUSER, an individual; JAIMEE WICKS, an individual; MICHELLE TARDANICO, an individual; SONYA FOWLER, an individual; JOHNNIE FOUNTAIN, an individual; KIMBERLE HILL, an individual; JEREMY DOE, an individual; COLIN VILLIERS, an individual; DOES 1 through 30, inclusive, | Dept:        03 |
| | Complaint Filed:   November 28, 2016 |
| Defendants. | |

/ / /

/ / /

# DECLARATION OF SGT. RENE MCNISH

I, Sgt. Rene McNish, declare as follows:

1.     I am currently a Sergeant with the Imperial County Sheriff's Department. I am not a party to this action. If called upon to testify, I could competently testify to the following facts as they are personally known to me.

2.     In 2013, I was a Police Investigator with the Hemet Police Department's Crimes Against Persons Bureau. Prior to becoming an Investigator, I attended a forty hour, week-long, special investigations course. This course included instruction on investigating child abuse and/or neglect, including interview strategies and techniques.

3.     In January 2013, I was assigned to investigate a sexual battery. The suspect was David Jakubowski.

4.     During my investigation I made personal observations and took contemporaneous notes. Shortly after my interviews with the witnesses, I documented my personal observations and investigation in a Supplemental Incident Report (DR# 13-278). I personally drafted Supplemental Incident Report (DR# 13-278). A true and correct copy of my Supplemental Incident Report (DR# 13-278) – with the minor victims' names redacted – is attached hereto as **Exhibit 138**.

5.     After receiving and reviewing the case, I contacted the Riverside County Child Assessment Team (RCCAT) and scheduled interviews for the five (5) minor victims.

6.     At the RCCAT interview, I spoke with Elizabeth Wheeler, the victim's mother and/or foster mother. Ms. Wheeler handed me a drawing Victim One made. Ms. Wheeler informed me that the drawing was a picture of Victim's buttocks with David's "wiener" next to it. I took the drawing, and booked it into evidence.

7.     The RCCAT Interviews were done in a room equipped with an audio/video capable camera. I personally viewed the real time video display in an

adjacent room. I had the ability to contact with the examiner while her examination was ongoing, and ask questions through her. The examiner did a thorough job. During the interviews the minor male victims disclosed information and revealed many details of David Jakuboski's sexually abusive conduct. The victims were very detailed in describing the various things that David Jakuboski's did.

8.    I took detailed notes of the interviews, and shortly after the interviews were completed, I memorialized and documented my personal observations in my Supplemental Incident Report (DR# 13-278). (*See* Exhibit 138.)

9.    Victim One told the examiner that "David put his Wiener in his butt." And, that this happened on multiple occasions. Victim One described the most recent assault in detail. Victim One explained that David was lying on his back, and David was putting his wiener in his buttocks. Victim One further described his attempts to resist David's sexual assault, and how he managed to "kicked him off." During the interview, Victim One was able to identify the penis and buttocks on a drawing. And, indicated that the buttock was where David put his wiener. Victim One was also able to describe and draw David's male genitalia.

10.   Victim Two witnessed David's sexual assault of Victim One. He explained that David was lying on top of Victim One and put "his wiener on" Victim One's "butt." Victim Two described Victim One's struggle to push David away, and told David to stop. But, David "kept holding him back" and "grinding him." Victim Two observed David's wiener as it passed between Victim One's legs.

11.   Victim Two disclosed that David did "the same exact thing" to him on more than one occasion. Victim Two blurted out that David "put his wiener on my legs!" Victim Two used his hands to point to his inner thigh, above the knee cap. During the interview, Victim Two was able to identify the penis on a drawing. And, indicated that David put his wiener on the inner thigh, just

1  below the buttocks.

12. Victim Two described an incident where David pushed him onto the bed, pulled their pants and underwear to their feet, and "he started doing it." Victim Two explained that David put his "wiener on my legs." Victim Two tried to resist and kicked him. But, David held Victim Two by the stomach, and kept pulling him back. David also threatened to knock Victim Two out. Victim Two was glad that David was in a different foster home, because now he doesn't have to "worry about him doing that nasty stuff."

13. During the interview, Victim Three stated that "David he used to get me naked and like punch me in my head. And he would like, get his penis and rub it and then put it between my legs." I observed this statement, and as Victim Three was saying this, it was clearly obvious to any viewer watching the interview on camera that this was a very disturbing process for victim three. Victim Three was hugging his own body and rocking himself in an effort to calm down. Victim Three revealed that this happened more than once.

14. Victim Three described a sexual assault. Victim Three said that David would "push me on the bed and he'd kick me and then he got me naked and did it." Victim Three explained that he went to his room after showering. David was waiting in Victim Three's room for him to finish his shower. David socked (punched) Victim Three in the back of his head and kicked him. David removed Victim Three's clothing. David then took his "penis" out, and "rubbed it" between Victim Three's legs, near his upper thigh. Victim Three tried to escape and told David to "get off" him. But, David "socked" him (punched) him in the head.

15. Victim Three did not tell anyone about the sexual assaults, because David threatened to stab him and beat him up.

17. Based on the evidence uncovered during my investigation and the minor victim's disclosures, I concluded that David Jakubowski had sexually

1   assaulted his younger foster brothers, and that his conduct reached the
2   degree that I felt he should be charged with criminal sexual assault and
3   battery. I took David into custody and transported him to the Hemet Police
4   Department for further questioning.

18.   After his initial detention, I read David the Miranda advisement. I ensured
      that David understood his rights. David demonstrated to my satisfaction that
      he understood the Miranda advisement.

19.   I interviewed David again at the Hemet Police Department. David was
      remarkably honest with me. He admitted to me that he sexually assaulted
      and molested his four younger foster brothers. During my interview David
      admitted the following:

      A.   David would block his bedroom door with his mattress and have his
           way with his younger foster brothers – i.e., Victims One, Two, Three
           and Five. David would place his penis between the minor victims'
           legs (near their buttocks and penis). David would rub his penis on the
           minor victim's body until he reached climax and ejaculated.
           Depending on the minor victim, this happened one to four times per
           victim in David's bedroom.

      B.   On multiple occasions, David forced his younger foster brothers –
           i.e., Victims One, Two, Three and Five – to perform oral copulation
           on him, until he reached climax and ejaculated.

      C.   David knew that his conduct was wrong, but his pleasurable
           experience overwhelmed his feelings of guilt. David could not stop.

      D.   David chose to sexually assault his younger foster brothers – as
           opposed to his foster sister – because it was easier for David to
           convince his younger foster brothers to do it.

20.   The most chilling part of the interview, however, was at the end. When I
      asked David if he were left alone with another unsuspecting young boy,
      would he sexually assault that child, he cooly answered yes.

---

DECLARATION OF SGT. RENE MCNISH

4

21. Based on David's statements, the Minor Victims' statements, and my personal observations as recorded in my Supplemental Incident Report (DR# 13-278), I placed David under arrest for violation of California Penal Code §288(b)(1), §288.5(a), and §288a(2)(a).

22. In my opinion, the investigation was cut and dry. David admitted that he sexually assaulted his four younger foster brothers. Further, the minor victims corroborated and disclosed the details of David's sexual assaults. And., during the interview, the minor male victims displayed physical behaviors consistent with those displayed by victims of sexual abuse.

23. David was booked and transported to the Southwest Juvenile Hall in Murrieta, CA.

24. On March 11, 2013, I personally drafted a Declaration and Determination (Probable Cause for Warrantless Arrest) for David Jakubowski. A true and correct copy of my Declaration and Determination (Probable Cause for Warrantless Arrest) – dated March 11, 2013 – is attached hereto as **Exhibit 139**.

25. I forwarded this case to the County of Riverside's District Attorney's Office for review and filing of criminal charges. At this time, the County of Riverside had all the information and evidence uncovered in my investigation.

I declare under penalty of perjury according to the laws of the United States that the foregoing is true and correct. Executed this August 14, 2019, in San Diego, California. ) except as to those matters stated on information and belief and as to those matters, I believe them to be true.

Sgt. Rene McNish

# Exhibit B

# Exhibit B

# Exhibit B

1   Shawn A. McMillan, Esq. – SBN: 208529
    Stephen D. Daner, Esq. – SBN: 259689
2   Adrian M. Paris, Esq. – SBN: 301355
    THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
3   4955 Via Lapiz
    San Diego, CA 92122
4   Telephone: (858) 646-0069
    Facsimile: (858) 746-5283
5

6   Attorneys for Plaintiff G.M.

7                   **SUPERIOR COURT OF CALIFORNIA**

8              **COUNTY OF RIVERSIDE, CENTRAL DIVISION**

9
    G.M., a minor, by and through his          Case No.:    RIC1615673
10  Guardian ad litem,
                                                **DECLARATION OF LISA CASTRO**
11                      Plaintiff,

12            vs.                               Judge:     Hon. Irma Poole Asberry
                                                Dept:      03
13  COUNTY OF RIVERSIDE, a public
    entity; MARLO ANN CRUZ, an
14  individual; CARRIE MOSIELLO, an
    individual; MICHAEL HUSER, an
15  individual; JAIMEE WICKS, an
    individual; MICHELLE
16  TARDANICO, an individual; SONYA
    FOWLER, an individual; JOHNNIE
17  FOUNTAIN, an individual;
    KIMBERLE HILL, an individual;
18  JEREMY DOE, an individual;
    COLIN VILLIERS, an individual;            Complaint Filed:   November 28, 2016
19  DOES 1 through 30, inclusive,

20                      Defendants.

21  ///

22

23

24  ///

25

26

27

28

    _____

                    DECLARATION OF LISA CASTRO

## DECLARATION OF LISA CASTRO

I, Lisa Castro, declare as follows:

1.    I am a certified foster parent through A Coming of Age, Foster Family Agency in Riverside, California. I am David Jakubowski and G███ M███? former foster mother. I am not a party to this action. If called upon to testify, I could competently testify to the following facts as they are personally known to me.

2.    In 2015, I was a foster parent and my foster home was certified by A Coming of Age, Foster Family Agency. On or about January 7, 2015, Ms Fowler placed David Jakubowski – age sixteen (16) – in my foster home. Ms. Fowler provided me with the County's Statement of Dangerous Propensities for David. I personally reviewed this statement. David's Statement of Dangerous Propensities did not disclose his prior sexual assault of young boys, or that he remained a risk to himself and others. A true and correct copy of the Statement of Dangerous Propensities provided to me when David was placed in my home is attached hereto as **Exhibit 176**.

3.    Ms. Fowler also provided me with the County's Foster Child's Needs and Case Plan Summary for David. I personally reviewed this plan summary. David's Foster Child's Needs and Case Plan Summary did not disclose his prior sexual assault of young boys. A true and correct copy of David's Foster Child's Needs and Case Plan Summary  is attached hereto as **Exhibit 177**.

4.    During David's placement process, no County social worker(s), probation officer(s), and/or employee(s) ever warned me that David had a known proclivity to sexually assault young boys.

5.    In the months following David's placement in my home, I continued to ask Ms. Fowler and David's probation officers, including Colin Villiers, for details regarding David's prior conviction and probation. The foster faimily

1           agency represented to me that David was convicted for his involvement in

2           sexual behavior with a girl. The County's probation officers, including

3           Colin Villiers, completely ignored my multiple calls and inquiries.

4    6.    I only learned, much later, that David had been convicted for the sexual

5           assault of his younger foster brothers in a prior placement when the workers

6           investigating G.M.'s rape told me about it. Prior to that, no County social

7           worker(s), probation officer(s), and/or employee(s) ever disclosed the

8           details regarding David's probation and conviction to me or otherwise

9           instructed that he was a danger to young boys.

10    7.    Prior to July 2015, Ms. Fowler visited my foster home. Ms. Fowler saw that

11           I also had a young foster boy, L▇▇ S▇▇, in my home. I believe that

12           L▇ was around nine (9) or ten (10) years old at this time. On another

13           visit, sometime in July 2015, Ms. Fowler saw that David and L▇ were

14           sharing a room. After seeing this, Ms. Fowler told me that David and L▇

15           could not room together because of their age difference. Ms. Fowler did not

16           elaborate, or warn me that David had a known propensity to sexually assault

17           young boys.

18    8.    On or about August 4, 2015, G▇ M▇ and D▇ M▇, his brother,

19           were placed in my home. The County social workers and Kimberle Hill,

20           G▇'s social worker, did not provide any warning or instructions

21           regarding G▇ and D▇. At this time, G▇ was six (6) years old and

22           D▇ was thirteen (13) years old.

23    9.    After G▇ was placed in my home, David's behavior deteriorated, he

24           started acting out, he began AWOL-ing more often, he was smoking

25           marijuana, and not going to school. I repeatedly told David's probation

26           officer(s) and Ms. Fowler that David's behavior was deteriorating –

27           including the details of his behaviors. David's probation officer(s) and Ms.

28           Fowler did not respond to any of my complaints or concerns.

      10.    On September 16, 2015, I asked N▇s, my son, to watch after Ga▇

1   while I was at a visit with another foster child. This visit was between 3:00
2   pm and 5:00 pm. At approximately 3:45 pm, D█████ returned home from
3   school. N█████ called to asked whether D█████ and his friends could play
4   behind the house. I said yes.

5   11.   In September 2015, C█████ and his brother had weekend visitation with Nora
6         and Robert Nix from 4:30pm Friday until 4:30pm Sunday. On September
7         19, 2015, Nora called me at 9:15am stating G█████ disclosed that he was
8         sexually molested by David sometime on Wednesday September 16, 2015. I
9         told Nora that I would call Mr. Mc Coy and the police. I called Mr. McCoy
10        and informed him of G█████'s allegation. Mr. McCoy told me to call the
11        police right away, and to get G█████ home so that he could speak with the
12        police. I did so. The police also requested that I arrange for G█████ to return
13        home. I called Nora, and told he to bring C█████ home ASAP. Deputy Areh
14        arrived at approximately 10:00 am. G█████ arrived home at approximately
15        10:45 am.

16  12.   Deputy Areh interviewed G█████. I was present for C█████'s interview.
17        Initially, G█████ was very quiet, and was not forthcoming with information.
18        G█████ soon opened up about the details of David's sexual assault and rape.

19  13.   At 2:00 pm, Social Worker Tamar Lawson and a Deputy arrived at my
20        home, and took G█████ to the police station to obtain additional information.
21        Ms. Lawson instructed me to stay home, and ensure that David did not
22        leave. Deputy Areh soon returned, and took David to the Moreno Valley
23        Police station for questioning. Afterward, the Crime Scene Investigation
24        Unit arrived, and gathered evidence – including David's blankets and sheets
25        and G█████'s clothing from Wednesday.

26  14.   At approximately 5:00 pm, Nora called, and told me that Ms. Lawson was
27        taking G█████ to a medical examination. Afterward, C█████ would be brought
28        back to the Nix's home.

    15.   At approximately, 9:30 pm Nora told me that the medical examination

DECLARATION OF LISA CASTRO

3

1   confirmed that G██████ had been sexually assaulted.

16. At approximately, 11:00 pm, Ms. Lawson called, and said she would
    interview David. Ms. Lawson was supposed to call me back, but never did. I
    did not see David again that night.

17. On September 20, 2018, I called the Juvenile Hall to ask about David's
    whereabouts. I was told that David was in custody at Juvenile Hall, and was
    charged with Penal Code, §269 (Rape).

18. At approximately 6:30 pm, Ms. Lawson returned to my home for further
    investigation. Ms. Lawson told me about David's prior sexual assault
    convictions, and that David had an extensive history of sexually molesting
    young boys. Ms. Lawson further told me that David never should have been
    placed in my foster home. Ms. Lawson was trying to determine why David
    had been placed in my home to begin with, because David should been
    maintained in a group home or another appropriate setting.

19. I was shocked, extremely upset, and disappointed. This was the first time
    that anyone had ever revealed the pertinent details regarding David's
    conviction and prior sexually assaults involving young boys. I complained
    that in suppressing this information, all other foster children in my home
    and all other visiting children were in great risk of being harmed. If I had
    known about David's prior convictions and history of sexually molesting
    young boys, I never would have accepted his placement in my home.

20. I complained to Ms. Lawson, that I had made numerous attempts to obtain
    information to clarify David's situation and gain an understanding of how I
    should be treating and/or dealing with him. But, the County Probation
    officers ignored my request. I later learned, I think from David himself, that
    his conviction was related to his involvement in sexual behavior with a girl
    that was a few years younger.

21. On or about September 24, 2015, I spoke with Ms. Fowler. She admitted
    that she did not know that the County had placed G██████, D██████, and other

---

DECLARATION OF LISA CASTRO

4

minors in my home. She was very surprised that ▇ was in my home.

22. On or about September 30, 2015, Anthony Tovar, from the County's Out-of-Home Investigation Unit, contacted me. Mr. Tovar explained that he was investigating me for neglect relating to David's sexual assault of G▇ I acknowledged that his investigation regarded a child being raped in my home.

23. On or about October 21, 2015, Mr. Tovar told me that the investigation for neglect was completed and that it was being closed as unfounded. The County concluded that its social workers and probation officers erred. Specifically, I was informed that the County concluded its workers failed to provide me with the pertinent details regarding David's conviction and prior history of inappropriate sexual behaviors toward younger boys. And, as a result, I could not foresee David's sexual assault and rape of ▇.

24. On September 19, 2015, I documented the incident, and my interactions with the social workers and law enforcement. A true and correct copy of my typed and handwritten statement – signed September 19, 2015 – is attached hereto as **Exhibit 166**.

I declare under penalty of perjury according to the laws of the United States that the foregoing is true and correct. Executed this October 24, 2018, at Moreno Valley, California.

Lisa Castro

DECLARATION OF LISA CASTRO

5